DECISION
Plaintiff-appellant, Kimberlyn King, appeals from a judgment of the Franklin County Court of Common Pleas granting summary judgment for defendants-appellees, Enron Capital Trade Resources Corp., Chris Houska and Aaron Kraft. Appellant also appeals from a judgment of the trial court granting the motion of defendant-appellee, J. Irl Williamson, to strike her complaint as to claims pertaining to him based upon a failure of service.
Appellant is a former employee of Enron and the individual defendants in the action are her former supervisors during her period of employment with the company. Appellant filed her complaint against Enron and the other defendants averring that, from approximately April 1, 1996 through November 29, 1996, she was employed at the Enron office in Dublin, Ohio. During this period, the complaint asserts, appellant was subjected to unwanted physical and verbal advances by her supervisor, appellee Williamson, who was subsequently fired after appellant complained of his conduct. Appellant herself was terminated by Enron a short time thereafter, the reason stated being her failure to fulfill productivity goals for her position.
Appellant asserts that her termination by Enron constituted employment discrimination in violation of R.C. 4112.02(A). Appellant also asserts that her discharge was in violation of Ohio's whistle-blower statute, R.C. 4113.52. Additionally, appellant's complaint sets forth an assault and battery claim against Williamson alone. Kraft and Houska have been voluntarily dismissed from the action.
Enron filed a motion for summary judgment asserting that appellant had not been subjected to an adverse employment action arising out of her sexual harassment charges against Williamson, that Enron had exercised reasonable care in investigating the charges brought by appellant and subsequently taking disciplinary action against Williamson, and that appellant herself had been discharged for reasons unconnected with her sexual harassment allegations against Williamson. In support of the motion for summary judgment, Enron presented the affidavits of Houska, Kraft, and Jacqueline Ellis, Enron's human resources manager. Enron also relied on appellant's deposition testimony. Appellant opposed the motion for summary judgment solely on the previously submitted materials and her own affidavit.
The trial court addressed appellant's complaint as presenting essentially three different claims against Enron. The first was a "quid pro quo" sexual harassment claim in which appellant's refusal to submit to unwelcome sexual advances had formed the basis for adverse employment decisions. The second claim was one for retaliatory discharge, based on an adverse job action, i.e., appellant's termination by Enron, in retaliation for her opposition to an unlawful discriminatory practice under R.C. Chapter 4112. The third claim was one under the whistle-blower statute, R.C. 4113.52, based upon a disciplinary or retaliatory job action against an employee for making a report concerning a company's practice in violation of statute or company policy constituting either a criminal offense or a hazard to public health or safety.
Regarding the quid pro quo claim, the court found that appellant had failed to establish a material issue of fact because the evidence submitted in opposition to summary judgment did not establish a demonstrable nexus between the offensive conduct of her supervisor and the subsequent adverse employment action against appellant. For similar reasons, the trial court found that appellant had failed to establish a material issue of fact with respect to her retaliatory discharge claim. Finally, the trial court noted that the whistle-blower statute applies only to employees who file a specific, detailed report sufficient to identify and describe the alleged violation, as required by R.C.4113.52(A)(1), and appellant thus did not fall under the whistle- blower statute. The trial court accordingly granted summary judgment for Enron on all claims against Enron in appellant's complaint.
The trial court subsequently addressed appellant's claims against Williamson in connection with Williamson's motion to strike appellant's complaint as to him for failure of service. The trial court reviewed the efforts made by counsel for appellant to serve Williamson, and Williamson's affidavit that he had not been served. The trial court found that, based on pertinent precedent, the affidavits submitted by counsel were insufficient to rebut the straightforward denial contained in Williamson's affidavit. The court accordingly granted Williamson's motion to strike appellant's complaint, essentially terminating the action as to him.
Appellant has timely appealed, and sets forth the following assignments of error:
 I. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON PLAINTIFF'S RETALIATORY DISCHARGE CLAIM AS THERE EXISTED GENUINE ISSUES OF MATERIAL FACT AS TO THE REASONS OF PLAINTIFF'S DISCHARGE.
 II. THE TRIAL COURT ERRED IN SUSTAINING WILLIAMSON'S MOTION TO STRIKE WHEN HIS AFFIDAVIT WAS CHALLENGED AND HE FAILED TO APPEAR AT THE EVIDENTIARY HEARING.
Initially, we note that this matter was decided, with respect to the claims against Enron, on summary judgment. Pursuant to Civ.R. 56(C), summary judgment may be granted only when the trial court determines there remains no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, that conclusion being adverse to the party opposing the motion. Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64
. A moving party cannot discharge its burden under Civ.R. 56 by simply making conclusory assertions that the nonmoving party has no evidence to prove its case. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. Rather, the moving party must point to some evidence that affirmatively demonstrates that the moving party has no evidence to support the claims set forth in the complaint. Id.
Upon appeal, our review of summary judgment is de novo. Koos v. Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579. We will thus conduct an independent review of the record without deference to the conclusions of the trial court. Jones v. Shelly Co. (1995), 106 Ohio App.3d 440.
Upon appeal, appellant does not advance argument with respect to her claim under Ohio's whistle-blower statute, but, rather, focuses upon her claims under R.C. 4112.02, governing unlawful discrimination in the workplace. The Ohio Supreme Court has held that "federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000(e) et seq., Title 42, U.S. Code, is generally applicable to cases involving alleged violations of R.C. Chapter 4112." Plumbers Steamfitters Commt. v. Ohio Civil Rights Comm. (1981), 66 Ohio St.2d 192, 196. The body of federal and state case law interpreting the comparable federal anti-discrimination statutes thus provides the model for addressing discrimination suits brought under Ohio's anti-discrimination statute. The test applied is that laid out by the Ohio Supreme Court in McDonnell Douglas Corp. v. Green (1973), 411 U.S. 792, 802-805, as later modified in St. Mary's Honor Cntr. v. Hicks (1993), 509 U.S. 502. Under this test, the plaintiff has the initial burden of proving, by a preponderance of the evidence, a prima facie case of unlawful employment discrimination. In a sex discrimination case, the plaintiff must show that she was a member of a protected class, that she was discharged or suffered an adverse job action, and that a comparable unprotected employee was treated differently. If the plaintiff is able to establish such a prima facie case of discrimination, then the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for its conduct. If the employer can articulate such a nondiscriminatory reason, then the presumption of discrimination raised by the prima facie case is rebutted, and the burden shifts back to the plaintiff to prove that the stated reason for the employer's action was merely pretextual and, that, discrimination was the true cause for the adverse job action or other conduct.
Appellant, as set forth above, alleges that she suffered an adverse job action in the form of termination from employment, either under a quid pro quo sex discrimination theory or a retaliatory discharge theory.
A review of the uncontroverted facts drawn from the affidavits indicates that appellant is an African-American female and, thus, a member of a protected class. She was employed by Enron as a telemarketing representative and her duties included contacting potential natural gas customers and setting up business appointments for Enron's field representatives. Through the first quarter of 1996, appellant received positive reviews by Enron for her good work performance.
Appellee Williamson was hired by Enron as manager of the call center where appellant worked in April 1996. Williamson immediately began a pattern of sexual harassment of appellant, including both verbal advances and physical contact. The details of this harassment as asserted by appellant are in no way contested by Enron, and without unnecessary reiteration of detail can be safely described as the ugliest form of persistent and unwelcome sexual advances in the workplace.
At this time, Aaron Kraft was appellant's direct supervisor in the call center, falling between her and Williamson in the company hierarchy. Chris Houska was the manager of market development for Enron, and an approximate peer of Williamson in the hierarchy, both reporting to the director of customer management. In their respective positions, neither Kraft nor Houska had authority to discipline or direct Williamson's conduct.
In early August 1996, following appellant's repeated rejection of Williamson's advances, Williamson attempted to place appellant on employment probation. Appellant, feeling that the probation was retaliation by Williamson for her rejection of him, refused to accept the probation confirmation letter from Williamson. A meeting ensued between Williamson, appellant, and Jacqueline Ellis, Enron's human resource manager. At this meeting, at a point where Williamson had left the room, appellant set forth in detail for Ellis her description of Williamson's conduct towards her. Less than two weeks later, on August 22, 1996, Enron terminated Williamson's employment based on appellant's allegations. Through this process, appellant had been advised by Ellis that she would not be placed on the probation initiated by Williamson, that she could take time-off as necessary to deal with the situation, and that counseling would be made available to her.
Both Kraft and Houska stated in their affidavits that, prior to and through this period, appellant's job performance in producing valid, productive leads for the field representatives had been substandard. By early September, appellant had been advised of these deficiencies, which included complaints from field representatives that appointments were set with non-qualifying customers, and that field representatives were arriving for appointments of which the prospective customer denied any knowledge. On September 3, 1996, Enron placed appellant on work probation for a period of sixty days. For the stated reason of unsatisfactory work performance, Enron subsequently terminated appellant's employment on November 29, 1996.
The elements of a claim for quid pro quo sexual harassment include: (1) that the employee was the member of a protected class; (2) the employee was subjected to unwelcome sexual harassment in the form of sexual advances or the request for sexual favors; (3) the harassment complained of was based on sex; (4) the employee's submission to such unwelcome advances was an express or implied condition for advancement or favorable job conditions, or that rejection of the sexual advances resulted in a tangible job detriment; and (5) the existence of respondeat superior liability. Kauffman v. Allied Signal Inc. (C.A.6, 1992), 970 F.2d 178,185-186. In such an action for quid pro quo sexual harassment, the employer will be held strictly liable for the misconduct of its supervisory employees under the theory of respondeat superior. Id.
Similarly, to support a claim for retaliatory discharge, an employee must establish: (1) that she was engaged in a protected activity; (2) that she was the subject of an adverse employment action; and (3) that a causal link existed between the protected activity and the adverse action. Thatcher v. Goodwill Industries of Akron (1997),117 Ohio App.3d 525, 534.
Both the quid pro quo and retaliatory discharge claims require a demonstrable nexus between the offensive conduct of the supervisor and the adverse employment action. Burlington Industries Inc. v. Ellerth (1998), 524 U.S. 742, 753; Chandler v. Empire Chem., Inc., Midwest Rubber Custom Mixing Div. (1994), 99 Ohio App.3d 396, 402.
Appellant's affidavit submitted in opposition to summary judgment contained the following pertinent statements:
 On August 9, 1996[,] * * * I was called into Defendant Williamson's office and he attempted to place me on probation. I refused to accept the letter. I knew that I had been meeting or exceeding the expected requirements for telephone marketers at Enron. I consistently made sixty (60) to seventy (70) calls per day and was averaging the three (3) to five (5) appointments per week. I had received during this period numerous amounts of praise from the outside sales representatives for the job that I performed in setting qualified appointments. The reason Defendant Williamson was attempting to place me on probation was not for my job performance but because I had rebutted the sexual overtures of Defendant Williamson.
 On September 9, 1996 I sent a correspondence to Jackie Ellis, Human Resource Manager of Enron. Attached as exhibit three (3) is a true and accurate copy of the letter I set [sic]. At the time I felt I was being penalized for my complaints concerning the sexual harassment of Defendant Williamson and his ultimate firing. At that time I was requesting a transfer. It is my firmly held belief as I was always performing my job duties in a satisfactory manner that Enron terminated my employment as a result of the sexual harassment complaint I filed against Defendant Williamson. I firmly believe that if it were not for the sexual harassment by Defendant Williams [sic] I would still be employed at Enron. [King affidavit, April 11, 2000, at paragraphs 9 and 10.]
In support of summary judgment, Enron presented the affidavits of Kraft, Houska, and Ellis. Kraft's affidavit stated that he recommended that appellant be placed on work probation in September 1996, and terminated in November 1996. Kraft's affidavit states that he made each of these recommendations without any knowledge of appellant's allegations of sexual harassment against Williamson, and without any knowledge of Ellis' investigation of the allegations. Kraft's affidavit further states that he was, in fact, completely ignorant of the reasons for Williamson's termination, and that the recommendations for probation and subsequent termination of appellant were made purely upon her work performance, including complaints from field representatives. Houska's affidavit likewise states that all employment decisions, with respect to appellant, were made independently and without knowledge of appellant's allegations of sexual harassment against Williamson, the reasons for Williamson's termination, or Ellis' investigation of the allegations. Ellis' affidavit states that she did not inform Kraft or Houska of appellant's allegations, nor of the follow-up investigation, and that appellant's allegations against Williamson were not discussed or considered as a factor in the subsequent employment decision regarding appellant.
Civ.R. 56(E) requires affidavits submitted in support or opposition to a motion for summary judgment to be made based on personal knowledge, setting forth facts that would be admissible in evidence. The trial court correctly stated that, "statements of feelings or beliefs are incompetent and inadmissible. They cannot be considered by a court when deciding a motion for summary judgment." (Trial court decision at 7), citing Hollowell v. Society Bank Trust (1992), 78 Ohio App.3d 574,581. ("Intentional discrimination cannot be proven by conclusory allegations made by the charging party. * * * Likewise, self- serving statements by the charging party that he believes he was discriminated against because of race are not enough.") Clearly, appellant's "feelings" or "beliefs" regarding the adequacy of her work performance and the causal link between her allegations against Williamson and subsequent adverse employment actions by Enron are insufficient to create a material issue of fact in the face of the specific factual assertions, based on first hand knowledge, set forth in Enron's affidavits presented in support of summary judgment. We accordingly find that the trial court did not err in concluding that appellant had failed to demonstrate that there remained a material issue of fact regarding the causal link between her termination and her prior allegations against Williamson. In the absence of such a causal link or nexus, appellant's action for discrimination does not meet the legal test set forth in the federal and Ohio case law addressing R.C. 4112.02 claims and, therefore, appellant's retaliatory discharge and quid pro quo sexual harassment claims against Enron were properly subject to summary judgment. Appellant's first assignment of error is accordingly overruled.
Appellant's second assignment of error asserts that the trial court erred in granting Williamson's motion to strike her complaint as to claims asserted against him individually. The record reveals that appellant made numerous attempts without success to serve the complaint on Williamson. Appellant ultimately obtained from the Powell, Ohio, post office a forwarding address in Toronto, Ohio, and attempted to serve Williamson there by certified mail. The certified mail return receipt was returned to the Franklin County Clerk of Court with the signature of one Joyce J. Williamson. The mailing was soon thereafter returned by this Joyce Williamson to the clerk's office based on mistaken identity and incorrect address. No proper service was subsequently acquired as to Williamson.
The standard of review for an appellate court, on an appeal from the trial court's grant of a motion to strike for failure to perfect service, is whether the trial court abused its discretion. Evans v. Ellis (July 9, 1987), Franklin App. No. 86AP-975, unreported. The term "abuse of discretion" connotes more than a mere error of judgment; it implies that the trial court acted unreasonably, arbitrarily, or unconscionably. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
Williamson's motion to strike was supported by his affidavit stating, inter alia, that he had never maintained a residence, business, or address for any other purpose in Toronto, Ohio, and, in fact, had never been physically present in Toronto, Ohio. Williamson further attested that he knew of no persons at that location and had authorized no persons in the area to act on his behalf. Finally, Williamson attested that he had no personal connection with or knowledge of Joyce J. Williamson.
In opposition to the motion to strike, appellant submitted the affidavits of her counsel's legal secretary and legal assistant, who stated that they had obtained the forwarding address from the postmaster in Powell, Ohio, and that the Toronto post office had confirmed this address. The affidavits also state in detail their efforts to locate Williamson and obtain an address for proper service. Additionally, one affidavit states that a representative of the Franklin County Clerk of Courts office had stated that service of summons had been perfected on J. Irl Williamson at the Toronto address.
In the cases of Taris v. Jordan (Feb. 20, 1996), Franklin App. No. 95AP-1075, unreported, and Rogers v. United Presidential Life Ins. Co. (1987), 36 Ohio App.3d 126, this court held that a plaintiff bears the burden of producing evidence to show that the defendant was properly served. The evidence presented by plaintiff must rebut the evidence offered by a defendant in an affidavit attesting that he was never served.
 "The courts are split with regard to the effect of an uncontroverted affidavit of a party, presumed to have been served, which indicates that the party was not actually served even though the Civil Rules regarding service were complied with." Rhonehouse, supra, at 124. [United Home Fed. v. Rhonehouse (1991), 76 Ohio App.3d 115 .] While Rafalski [Rafalski v. Oates (1984), 17 Ohio App.3d 65] suggests that an uncontroverted affidavit is in itself sufficient to require that a default judgment be found void ab initio, other decisions suggest that the trial court must assess competency and credibility of the affiant and determine whether sufficient evidence of non-service was presented. Rhonehouse, supra, at 125. Not only do we not interpret Rogers to suggest that only evidence sufficient to "controvert" a defendant's affidavit is defendant's admission or the testimony of one who observes the complaint in defendant's possession, but to require only such evidence in order to contradict a defendant's affidavit of non-service would in effect eliminate the provisions of Civ.R. 4.6(D); only by certified or personal service could a plaintiff reasonably be assured of proper service of process on a defendant willing to challenge that aspect of the case. [Taris, supra, at 6.]
In Taris, the plaintiff had introduced sufficient evidence from postal authorities and the defendant himself to controvert the defendant's affidavit that he had never been served. The trial court in the case before us, however, found that the quantum of evidence offered by appellant is insufficient to rebut Williamson's affidavit. The court noted that the two secretarial affidavits, when accepted as true, did not establish proper service in the face of Williamson's clear and straightforward denial.
We agree with the trial court that it would be improperly speculative to draw conclusions from the secretarial affidavits submitted by appellant in order to arrive at the determination that proper service was obtained on Williamson. While the affidavits established that counsel and his staff made extensive efforts to locate Williamson, who quite possibly was equally devoted to making himself unavailable, this evidence establishes, at best, the reasonableness of counsel's efforts, but does not establish that service was actually perfected, which is, of course, the crux of the matter. We find that the trial court has correctly applied Taris and Rogers to the facts of the present case, and properly struck appellant's complaint as to Williamson for lack of valid service. Having failed to find an abuse of discretion on the part of the trial court in striking appellant's complaint as to appellee Williamson, appellant's second assignment of error is overruled.
In accordance with the foregoing, appellant's first and second assignments of error are overruled and the judgment of the trial court granting summary judgment to Enron and striking appellant's complaint as to appellee J. Irl Williamson is affirmed.
 ____________ DESHLER, J.
BRYANT, P.J., and BOWMAN, J., concur.